## UNITED STATES v. KAMP.

### Cr. No. 1788–50.

United States District Court
District of Columbia.

Feb. 6, 1952.

See also, D.C., 176 F.2d 618.

758

Charles M. Irelan, U. S. Atty., and William Hitz, Asst. U. S. Atty., Washington, D. C., for the U. S.

John J. Wilson, Washington, D. C., for Joseph P. Kamp.

KIRKLAND, Judge.

The defendant, Joseph P. Kamp, was cited by a majority vote of a Committee on Lobbying Activities of the United States House of Representatives for contempt for failure to produce certain records under the force of a subpoena duces tecum. The House of Representatives voted 215–115 to refer the case to the United States Attorney and under that request the defendant was indicted on Nov. 27, 1950, for violation of Title 2 U.S.C.A. § 192 for wilful contempt of the Congress. He was tried and convicted before a jury and that Court subsequently awarded him a new trial.

■ Congress has the power to conduct inquiries in regard to existing or proposed legislation and a legislative purpose is presumed in authorizing a Congressional investigation. In re Chapman, 166 U.S. 661, 17 S.Ct. 677, 41 L.Ed. 1154. The investigation by the Committee on Lobbying Activities of the House of Representatives was a valid inquiry and this Court finds that the material called for in the subpoena was pertinent to that inquiry.

Two interesting questions of law have been presented by the record. One, whether the Chairman of a Congressional Committee has the power to issue a subpoena for the appearances of witnesses without approval of the committee, and two, whether under the facts of this case the defendant is guilty of wilful contempt of Congress.

In the Reorganization Act of 1946, P. L. 601, 79th Congress, 2nd session, 60 Stat. 812, when the Congress reorganized and made more efficient its own functions, it

set up nineteen standing committees of the House of Representatives and only in sec. 121(q), Un-American Activities Committee, did Congress set forth the specific power and procedure of a committee to subpoena witnesses and records and other documents. Sec. 134 of this act entitled "Committee Powers" authorizes power of subpoena for standing committees of the Senate only.

The Select Committee on Lobbying is not a standing committee of the United States House of Representatives, but is a special committee and was created by House Resolution No. 298, 81st Congress. It is provided that the committee or a subcommittee shall have power to compel witnesses to appear. The resolution provides that the committee or any sub-committee thereof shall have power "* * * *to require the attendance of such witnesses and the production of such books, papers, and documents, and to take such testimony, as it deems necessary. Subpoenas may be issued under the signature of the chairman of the committee or any member designated by him, and may be served by any person designated by such chairman or member. The chairman of the committee or any member thereof may administer oaths to witnesses." (Italics supplied.)

There is an ambiguity in the paragraph which first gives blanket authority to the committee or sub-committee to require the attendance of witnesses and the production of documents. Having asserted the major premise, the direction for the issuance of subpoenas appears to be a minor premise. It would appear to set forth the mere mechanics by which the subpoenas are issued. The context would admit that committee action was required in order to interpret the ambiguity. It is necessary to look first to the rules of the House of Representatives for guidance. There is apparently no rule of that august body governing the situation. The committee was left to their own initiative to make clear this important function. Apparently, from the record some committees require committee action, others issue subpoenas through the chairman or any of its members, and in some instances the chairman without consultation acts entirely upon his own. How-

ever, it would appear that the simpler way of resolving the question is to have the matter settled in the organizational meeting of the committee. However, for the Court's determination of this particular case that matter is not important.

In this case despite the fact that the chief counsel of the committee was the sole witness in the case, he testified that he was never permitted to view the executive minutes of the meeting, therefor did not know whether such a minute existed. Testimony in the case further indicated that no written opinion had been sought of the Parliamentarian or Assistant Parliamentarian of the House of Representatives and while efforts were made to introduce an advisory opinion of the Legislative Reference Service, which was authorized by the Re-Organization Act of 1946, a casual reading of Section 203, 2 U.S.C.A. § 166 and note, of that act indicates that this service has no power to formulate opinions on committee proceedings, which would be of the quality of admissible expert testimony.

■ The main question of the case turns upon the question of whether the defendant was guilty of the words of the statute that he "failed and refused to produce certain records". It is to be observed that he did appear at the hearing, to that limited extent he honored the subpoena. His appearance might be construed to be a waiver of any defect in the issuance of the subpoena, but the point involved here is concerned with the next step of the proceedings, the question of his default after his appearance. When he was called upon to state whether he had produced the records of The Constitutional Educational League covering the period, January 1, 1947 to May 1, 1950, he replied: "No, sir; I did not. I haven't had time to do the job that the subpoena asked me to do; and, besides, I wanted the opportunity of presenting our position to this committee, our legal position." When he was again asked whether he had the record with him, he said: "I haven't had time to do anything like that." When a minority member asked him if he would produce them if he were given time, he replied: "Well, before I could begin to do the job, I would like to

have the committee's statement as to how and why we come under the committee's authority. That was my purpose in coming here today." When asked again if he proposed to give the records, he said: "Then I would either have to furnish the information or suffer the consequences. I would be perfectly willing to, one or the other." Again he was asked by a minority member if he refused to give the information asked for by the committee, and replied: "No, I don't refuse." When asked if he proposed to give it at any time, he said: "I do propose to give it to you when and if this committee can establish its right."

Under the Constitutional guarantee of the First Amendment of the right of petition to the Congress, Congress respects those rights of its citizens. Ours is a government of laws and not of men, and the Government is not the master of the people, but is in turn, the servant of the people.

A presumption of innocence attaches to a defendant in a criminal trial and remains with him throughout the course of the trial. This presumption must be overcome by evidence produced by the prosecution. If the finder of the facts has a reasonable doubt as to the defendant's guilt at the close of the case an acquittal must be returned. The evidence introduced in this case by the Government as set forth above raises a reasonable doubt in the mind of this Court that the defendant wilfully defaulted when he appeared in response to the subpoena.

Committees of Congress must conduct examinations in such a manner that it is clear to the witness that the Committee recognizes him as being in default, and anything short of a clear cut default on the part of the witness will not sustain a conviction for contempt of Congress. The transcript of the defendant Kamp's testimony fails to disclose such a clear cut default. The witness is not required to enter into a guessing game when called upon to appear before a committee. The burden is upon the presiding member to make clear the directions of the committee, to consider any reasonable explanations given by the witness, and then to rule on the witness' response.

Since the government has failed to prove a wilful default by the defendant beyond a reasonable doubt, the Court will find the defendant not guilty of the charge in the indictment.